**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Short and Barbara Short, a married couple,<br><br>Plaintiffs,<br><br>vs.<br><br>Chase Home Finance LLC; and John Bland and Jane Doe Bland, a married couple,<br><br>Defendants. | No. CV-11-133-PHX-DGC<br><br>**ORDER** |

In October 2007, Paul and Barbara Short entered into a mortgage loan transaction with Chase to purchase property in Mesa, Arizona. Pursuant to a loan modification agreement dated July 24, 2008, the monthly mortgage payment totaled $2,268. After experiencing financial hardship, the Shorts sought a second loan modification under the Home Affordable Modification Program ("HAMP"). Chase provided the Shorts a HAMP trial period plan under which they made three consecutive modified payments of $1,814 beginning November 1, 2009.

According to the Shorts, this modified amount was to become their permanent mortgage payment given their full performance under the trial period plan. In February 2010, Chase provided the Shorts with a proposed HAMP loan modification agreement which would require them to make a payment of $2,600. The Shorts have tendered

modified payments to Chase, some of which have been accepted, but have declined to make the higher payment of $2,600. Chase commenced foreclosure proceedings in September 2010.

The Shorts filed suit against Chase and one of its employees three months later. Doc. 1-1 at 4-22. Plaintiffs allege, among other things, that Chase intentionally misrepresents that it is HAMP compliant, that Chase has breached its agreement with them for HAMP or other foreclosure prevention alternatives, that Chase fraudulently induced them into the HAMP trial period plan in order to receive modified mortgage payments Chase otherwise would not have received, and that Chase has improperly attempted to foreclose on the property. The amended complaint asserts ten claims: fraud, misrepresentation, breach of contract, promissory estoppel, violation of the Arizona consumer fraud act, breach of the covenant of good faith and fair dealing, violation of A.R.S. § 33-807.01, defamation, intentional infliction of emotional distress, and wrongful foreclosure. Doc. 9. Plaintiffs seek injunctive relief and compensatory and punitive damages in an amount not less than 25 million dollars. *Id.* at 24.

Defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 10. The motion is fully briefed. Docs. 19, 22. For reasons stated below, the motion will be granted.[1]

**I.  Rule 12(b)(6) Standard.**

The purpose of a Rule 12(b)(6) motion is to dispose of claims that are without legal basis or lack sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim to relief, the well-pled factual allegations "'are taken as true and construed in the light most favorable to the nonmoving party.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted). Legal conclusions couched as

---

[1] Plaintiffs' request for oral argument is denied because the issues have been fully addressed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

- 2 -

factual allegations "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), and therefore are "'insufficient to defeat a motion to dismiss for failure to state a claim,'" *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted). To avoid a Rule 12(b)(6) dismissal, and satisfy the pleading requirements of Rule 8(a), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## II. Defamation, Emotional Distress, and Wrongful Foreclosure.

Plaintiffs do not oppose the motion to dismiss with respect to the claims for defamation, intentional infliction of emotional distress, and wrongful foreclosure (counts eight, nine, and ten). The motion will be granted in this regard.

## III. Alleged Violations of HAMP.

The Department of the Treasury created HAMP as part of the Troubled Assets Relief Program passed in 2008. HAMP provides mortgage servicers financial incentives to modify the terms of eligible loans. Pursuant to guidelines issued by the Secretary, HAMP requires participating servicers to consider borrowers for loan modifications and suspend foreclosure activities while loans are being evaluated. The program does not require loan modification. *See Marks v. Bank of America, N.A.*, No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *5 (D. Ariz. June 22, 2010); *Cleveland v. Aurora Loan Servs., LLC*, No. C 11-0773 PJH, 2011 WL 2020565, at *3 (N.D. Cal. May 24, 2011).

The general allegations pled in the amended complaint, and the causes of action asserted, include alleged violations of HAMP. For example, with regard to purported duties imposed by HAMP, the complaint states: "Defendants were aware of their duties under HAMP" (Doc. 9 ¶ 16); "Chase was aware that the maximum interest rate on a permanent HAMP loan modification was five percent (5%)" and a HAMP modified

payment "may not exceed thirty one percent (31%) of a borrower's monthly gross income" (¶¶ 23-24); "Under the HAMP program, Chase is aware that Plaintiffs' mortgage payments . . . are capped at $1,814.27" (¶ 26); "Pursuant to HAMP, Chase is required to send a 'Borrowers Notice' to borrowers" (¶ 32); "Chase is aware that if a borrower's HAMP application is denied (for any reason), then Chase must evaluate the borrower for all other loss mitigation/foreclosure prevention alternatives, prior to recording a Notice of Trustee's Sale" (¶ 33); "HAMP Guidelines [require] that if an Arizona borrower completes the [trial period plan], the mortgage modification terms become permanent" (¶ 49); and "Chase is required to make permanent all HAMP Modified Mortgage Payments, if [the] borrower timely makes three (3) Modified Mortgage Payments" (¶ 72). With respect to alleged breaches of those duties, the complaint asserts, among other things, that Chase "breach[ed] its promises and representations made to Plaintiffs [and] did not provide Plaintiffs with the 'Borrowers Notice'" (¶ 31), that Chase "induced Plaintiffs into the HAMP plan to receive Modified Mortgage Payments from Plaintiffs" (¶ 38), that Chase "breached its agreement with Plaintiff for HAMP" (¶ 43), that Chase "misled Plaintiffs into believing that Chase is HAMP compliant" (¶ 109), that Chase "refus[ed] to properly and timely review Plaintiffs' HAMP application" (¶ 114), and that Chase refused to make Plaintiffs' HAMP modification permanent unless Plaintiffs agreed to "terms that are expressly-barred by HAMP" (¶¶ 55, 74, 95, 120).

Courts in this Circuit and others have consistently held that "there is no express or implied private right of action to sue lenders or loan servicers for violation of HAMP." *Cleveland*, 2011 WL 2020565, at *3 (citations omitted); *see Marks*, 2010 WL 2572988, at *5-7. "HAMP grants Fannie Mae, not individual borrowers, the right to sue to ensure compliance." *Wright v. Chase Home Finance LLC*, No. CV-11-0095-PHX-FJM, 2011 WL 2173906, at *2 (D. Ariz. June 2, 2011). HAMP is not a contract between Plaintiffs and Chase, and did not amend Plaintiffs' loan documents. Nor are Plaintiffs third-party

beneficiaries of HAMP. *See id.*; *Marks*, 2010 WL 2572988, at *3-5. "As the Supreme Court recently stated, 'the absence of a private right to enforce statutory obligations would be rendered meaningless if [plaintiffs] could overcome that obstacle by suing to enforce the contract instead.'" *Wright*, 2011 WL 2173906, at *2 (quoting *Astra USA, Inc. v. Santa Clara Cnty.*, 131 S. Ct. 1342, 1348 (2011)).

Plaintiffs assert that they have not brought suit to enforce HAMP (Doc. 19 at 7), but this assertion is belied by the complaint's allegations. Plaintiffs make clear in their response that the central issue in this case is Chase's compliance with HAMP, that is, whether "Chase may offer the HAMP [trial period plan], but when it becomes time to make the HAMP modification permanent, change the permanent modification terms outside the HAMP guidelines, but continue to represent the permanent agreement as a HAMP modification." Doc. 19 at 18. To the extent Plaintiffs' claims are based on alleged violations of HAMP, they will be dismissed. *See Wright*, 2011 WL 2173906, at *2 (dismissing claims for breach of contract and breach of the implied covenant); *Cleveland*, 2011 WL 2020565, at *4-5 (dismissing breach of contract and promissory estoppel claims); *Puzz v. Chase Home Finance LLC*, 763 F. Supp. 2d 1116, 1121-27 (D. Ariz. 2011) (dismissing claims for fraud, misrepresentation, promissory estoppel, and violation of the Arizona consumer fraud act).

**IV. Fraud and Misrepresentation.**

The claims for fraud and misrepresentation, like most other claims asserted in the complaint, largely are based on alleged violations of HAMP. Doc. 9 ¶¶ 56-82. But those claims fail even if the Court were to find that Plaintiffs have alleged fraudulent misrepresentations on the part of Chase separate and apart from HAMP.

An essential element of claims for fraud and misrepresentation is justifiable reliance on the alleged misrepresentation. *See Kuehn v. Stanley*, 91 P.3d 346, 350 (Ariz. Ct. App. 2004); *Walters v. First Fed. Sav. & Loan Ass'n of Phoenix*, 641 P.2d 1235, 240 (Ariz. 1982). Plaintiffs assert that they relied on Chase's misrepresentations regarding

the loan modification process by making modified payments totaling nearly $20,000. Doc. 9 ¶¶ 64, 78. Because Chase was required only to *consider* modifying Plaintiffs' loan, however, Plaintiffs could not have "reasonably believed that [Chase] was obligated to modify [their] loan." *Marks*, 2010 WL 2572988, at *4; *see Escobedo v. Countrywide Home Loans, Inc.*, No. 09cv1557 BTM(BLM), 2009 WL 4981618, at *3 (S.D. Cal. Dec. 15, 2009) ("A qualified borrower would not be reasonable in relying on the Agreement . . . because [it] does not *require* that Countrywide modify eligible loans.") (emphasis in original). Plaintiffs cannot plead the essential element of justifiable reliance.

Nor does the complaint adequately plead the basic element of damages. Plaintiffs allege that they "have been damaged in the form of actual fees and charges in the period during which Chase should have expressly approved or denied Plaintiffs' HAMP application[.]" Doc. 9 ¶¶ 67, 81. Chase argues, correctly, that Plaintiffs suffered no compensable damage by making reduced mortgage payments. Doc. 10 at 6. The allegations of "increased fees and costs incurred to avoid foreclosure" and "loss of opportunities to pursue refinancing or loss mitigation strategies" (Doc. 9 ¶¶ 67, 81) are entirely too vague to survive dismissal.

The claims for fraud and misrepresentation (counts one and two) will be dismissed.

**V.     Breach of Contract and Promissory Estoppel.**

Plaintiffs assert that pursuant to the terms of the HAMP trial period plan (Doc. 9-1 at 5-8), Chase promised that if Plaintiffs were to timely make three trial period payments, then Chase would modify the loan and the permanent mortgage payment would be the trial period amount of $1,814. Doc. 9 ¶¶ 21, 72, 94. The trial period plan contains no such promise.

The plan states that if Plaintiffs were to comply with its terms, then Chase would provide Plaintiffs with a loan modification agreement "as set forth in Section 3[.]"

Doc. 9-1 at 5. Section 3 says nothing about making the trial period payment – in this case, $1,814 – the permanent mortgage payment. Section 3 provides, in relevant part:

> I understand that once Lender is able to determine the final amounts of unpaid Interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D above, *the Lender will determine the new payment amount*.

*Id.* at 7 (emphasis added). The plan makes clear that the trial period payment is an "estimate" of the permanent payment that will be required under the modified loan terms, that this new amount is to be "finalized in accordance with Section 3," and that the actual payments under the modified loan terms "may be different" than the trial period payment. *Id.* at 6.

Contrary to what Plaintiffs allege (Doc. 9 ¶ 21), the trial period plan does not state, and no other promise is alleged to have been made, that Chase "would permanently modify Plaintiffs' mortgage to payments of $1,814.27." Moreover, the trial period plan makes clear that it is not a modification of the loan documents, and those documents will not be modified unless Chase provides Plaintiffs with fully executed copies of the plan and the loan modification agreement. Doc. 9-1 at 6-7. The complaint contains no allegation that Plaintiffs received fully executed copies of those documents.

Plaintiffs purport to rely on a consent agreement between Chase and the Arizona Attorney General "whereby Chase agreed that it would comply with all HAMP Guidelines for all of its Arizona borrowers." Doc. 9 ¶ 48. Plaintiffs do not claim to be parties to that agreement. "It would be a novel holding for the [C]ourt to rule that a breach of contract action can be maintained [by] a person who is not a party to the contract being sued upon." *Traffas v. Bridge Capital Investors II*, No. 90-1304 MLB, 1993 WL 339293, at *3 (D. Kan. Aug. 23, 1993); *see also Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999) (parties who "benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract"); *Araiza v. U.S. W. Bus. Res., Inc.*, 904 P.2d 1272, 1278 (Ariz.

Ct. App. 1995) (third party that is "merely an incidental beneficiary" cannot maintain a breach of contract action).

The claims for breach of contract and promissory estoppel (counts three and four) will be dismissed. *See Lund v. CitiMortgage, Inc.*, No. 2:10-CV-1167 TS, 2011 WL 1873690, at *2-3 (D. Utah May 17, 2011).

## VI. Breach of the Covenant of Good Faith and Fair Dealing.

Arizona law implies a covenant of good faith and fair dealing in every contract. "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca,* 726 P.2d 565, 569 (Ariz. 1986).

The complaint alleges that "Chase misled Plaintiffs into believing that Chase is HAMP compliant and Chase would adhere to the terms of the [trial period plan]." Doc. 9 ¶ 109. Chase allegedly breached the covenant of good faith and fair dealing by failing to permanently modify Plaintiffs' loan. *Id.* ¶¶ 111-12. The covenant of good faith and fair dealing does not entitle either party to rights excluded by the contract, "nor to protection in excess of that which is provided for in the contract[.]" *Rawlings*, 726 P.2d at 571. As explained more fully above, Chase never agreed, contractually or otherwise, to permanently modify Plaintiffs' loan.

The complaint further alleges that Chase breached the covenant by commencing a trustee's sale, threatening foreclosure and collection action, refusing to communicate directly with Plaintiffs' attorney, and mishandling phone calls. Doc. 9 ¶¶ 113-14. Plaintiffs do not explain how this purported conduct deprives them of a contractual benefit.

The Court concludes that Plaintiffs have not alleged sufficient facts to plead a claim for breach of the covenant of good faith and fair dealing. Count six will therefore be dismissed.

**VII. Consumer Fraud Act.**

Arizona's consumer fraud act, A.R.S. § 44-1522, "makes it illegal to commit fraud or deception 'in connection with the sale or advertisement of any merchandise.'" *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (quoting § 44-1522(A)). Plaintiffs do not dispute that this case concerns the possible modification of an existing contract, not the sale or advertisement of merchandise covered by § 44-1522. Moreover, Chase correctly points out (Doc. 22 at 5) that the consumer fraud act claim appears to be nothing more than an alleged violation of HAMP. Plaintiffs assert that the Court may "look to the standards laid out by HAMP" in deciding whether Chase has violated the act (Doc. 19 at 9), but present no legal authority in support of this assertion. The consumer fraud act claim (count five) will be dismissed.

**VIII. A.R.S. § 33-807.01.**

Section 33-807.01 provides that before a trustee may give notice of a trustee's sale for certain residential property, "the lender must attempt to contact the borrower to explore options to avoid foreclosure at least thirty days before the notice is recorded." A.R.S. § 33-807.01(A) (2010). Plaintiffs cite not a single case finding that this statute creates a private cause of action.

But even if the Court were to assume that it does, the complaint fails to plead a violation. The notice of trustee's sale was recorded on September 24, 2010. Doc. 9 ¶ 44. The complaint makes clear that on August 1, 2009 – more than thirty days before the trustee gave notice of a trustee's sale – Chase contacted Plaintiffs to explore "a variety of workout options" to avoid foreclosure. *Id.* ¶ 18. The claim for violation of A.R.S. § 33-807.01 (count seven) will be dismissed. *See Puzz v. Chase Home Financial LLC*, No. CV 2010-013585 (Ariz. Super. Ct. July 21, 2011); Doc. 22-1.

**IX. Conclusion.**

Plaintiffs agree to the dismissal of the claims for defamation, intentional infliction of emotional distress, and wrongful foreclosure. The complaint largely asserts violations

of HAMP on the part of Chase, but HAMP provides for no private right of action. Even when accepted as true and construed in Plaintiffs' favor, the allegations of the amended complaint fail to state a claim to relief. The motion to dismiss will be granted.

**IT IS ORDERED:**

1. Defendants' motion to dismiss (Doc. 10) is **granted**.

2. The Clerk is directed to enter judgment accordingly.

Dated this 22nd day of August, 2011.

David G. Campbell
United States District Judge